Mary Karyl Sweeney (DEBTOR)

10545 Grandview Drive

La Mesa, CA 91941

(619) 593-1721

FILED
ENTERED
LODGED
RECEIVED

APR 27 2011

CLERK, U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

In re:

Mary Karyl Sweeney

DEBTOR

Case No.: 10-10746-LT13

RESPONSE TO APPLICATION FOR

AWARD OF COMPENSATION OF ATTORNEYS'

FEES

DATE: May 24, 2011

TIME: 11:00a.m.

CTRM: 2

_____ ) Hon. Laura S. Taylor

TO ALL INTERESTED PARTIES

NOW COMES, MARY SWEENEY, (hereinafter "Debtor") and the response to Chang & Diamond APC (hereinafter "Attorneys") and its Application of Attorney's fees. I hereby declare, under penalty of perjury, these facts regarding (a) whether, when, and by what means I advised Chang & Diamond, APC that I do not support the Fee Application; and (b) the reasons that I do not support the fee application, as follows:

1. On Thursday, February 24, 2011, at 9:15a.m., Attorneys sent Debtor an email recommending: "Let this case be dismissed."

Sjp 10746 ves

2.   On Thursday, February 24, 2011, at 1:00p.m., Debtor emailed Attorneys: "If they dismiss the case, will I get my monthly payments back – and then how much do I owe Chang and Diamond?"

3.   On Thursday, February 24, 2011, at 1:31p.m., Attorneys emailed Debtor: "When your case is dismissed, you will not get any of the payments you made to the trustee back. The trustee will pay the balance of our attorneys fees and distribute the remainder to your creditors." In fact, the Attorney's response was incorrect.

4.   On Thursday, February 24, 2011, at 2:17p.m., Debtor emailed Attorneys: "Why, then, did I get my monthly payments refunded the first time I withdrew? What is the balance of your attorney fees? Which creditors would be paid?"

5.   On Thursday, February 24, 2011, at 3:01p.m., Attorneys emailed Debtor: "I anticipate that the fee application will be for between $5,500 to $6,000. We are electing to file a fee application rather than be awarded the presumptive fee of $3300…" This was the first time attorneys informed Debtor of any anticipated additional fees.

6.   On Friday, February 25, 2011, at 8:15a.m., Debtor, surprised by the fee amount quoted, emailed Attorneys: "How much did your firm charge me for the first filing (from Feb-June) and how many hours did you have invested then?"

7.   On Friday, February 25, 2011, at 11:34a.m., Attorneys emailed Debtor: "Our the attorneys fees for the prior case was the presumptive fee of $3,300. There is no need to monitor our time when the fees requested are presumptive."

8.   On Monday, February 28, 2011, at 2:53p.m., Debtor objected to the anticipated amount of the fee application by stating in an email to the Attorneys: "Since there was very little done on the first filing, I am

hoping your firm will take that into consideration as you prepare your fees for this 2nd filing, especially since no one told me I would be on the hook for the entire $3300 for the first filing before I withdrew it and refiled just a week or so later. In retrospect that was a very costly error that I made partially because I did not fully understand the consequences. I thought it was $3300 for the entire case and that if I withdrew prematurely, I would only be charged for the time actually spent vs. the entire fee."

9. Attorneys had been made aware of Debtor's dissatisfaction with their actions in June, 2011, and since. (Please see details below.)

10. On Monday, February 28, 2011 at 2:53p.m., Attorneys emailed debtor: "I understand that you don't think we did much work for you, however each chapter 13 takes a tremendous amount of…time…"

11. Dissatisfied with the response from the Attorneys, dissatisfied with aspects of their representation throughout the bankruptcy filings, and uninformed of her rights regarding the fees, Debtor planned to attend the hearing on April 12, 2011, to ask the Court about her options.

12. On Monday, April 11, 2011, Debtor sent an email to Attorneys: "Subject: I DO object to the fee increase". In it Debtor wrote, "I noticed in your court filing that you stated that I do not object to the increase in fees you have asked the Court to approve; however, I do object."

13. Debtor has been dissatisfied throughout the relationship with Attorneys in this case and the previous case they filed for Debtor, but had insufficient resources to change counsel.

14. Attorneys filed a chapter 13 bankruptcy on Debtor's behalf on March 4, 2010. That case was dismissed on June 9, 2010. They filed a

second case on June 21, 2010. The original plan was refiled, with few – if any – modifications.

15. Debtor had become increasingly dissatisfied with the services of the Attorneys over time, e.g. miscommunications, poor customer service, lack of courtesy, disrespect and condescension, but Debtor was advised to continue with Attorneys because of constraints on time and resources and the potential foreclosure on Debtor's home.

16. On June 13, 2010, in response to Debtor's inquiry regarding refiling, Attorney Richard Chang emailed Debtor: "The cost is $1274.00. This includes the filing fee".

17. On June 24, 2010, Attorney Richard Chang emailed Debtor: "Do you concerns about my representation. If you are, you are free to find another attorney."

18. On June 29, 2010, Debtor emailed a complaint to Attorney Richard Chang: "I would like to know if someone else in your office…can represent me going forward. I would also like you – or someone in your firm – to write me and thoroughly describe: A. The process of changing counsel at this point in my case, and B. The consequences to me and my case if I decide to change counsel 1. Either within your firm, or 2. If I hire a different firm to represent me going forward. (I cannot afford another fee.)" Debtor's email explained that "I want and need … a committed advocate for me, my case and my best interests. Someone I trust to answer my questions, advise me and help me get the best possible outcome. I no longer believe I can achieve that with you as my counsel…" and went on to describe specific reasons for her dissatisfaction. As a result of that complaint, Attorneys agreed that Alison Maloof would be the Debtor's new point-of-contact within the firm.

19. However, Debtor continued to experience miscommunications, poor customer service, and lack of courtesy, disrespect, condescension, misinformation, errors and omissions from Attorneys. In fact, Debtor asserts that some of the time Attorneys allegedly spent on this second case could have been avoided with more appropriate clear, complete and professional communications on their part throughout the process.

20. Debtor requests that this Court decline Attorneys' request for additional fees.

21. Debtor's research has discovered average hourly rates of $250/hr. for highly-rated bankruptcy attorneys in San Diego County and believes the $400/hr. rate requested by Attorneys is excessive – especially considering the quality of service received.

22. Debtor requests that this Court reduce Attorneys' fees to $1274.00 (for this 2nd filing of substantially the same case which was filed on March 4, 2010 and dismissed on June 9, 2010) or to an amount no greater than the presumptive fee of $3300.00, less $850 already received, for a total of no more than $2550 to be disbursed to Attorneys from the funds in the Trustee's control.

DATED: April 26, 2011

/Mary Karyl Sweeney/

Mary Karyl Sweeney